**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **ROGER S.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 7:21-cv-00360** |
| | ) | |
| **KILOLO KIJAKAZI,**[2] | ) | |
| | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### REPORT & RECOMMENDATION

Roger S. ("Roger") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for a period of disability and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Roger alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) assess his mental impairments and (2) assess his allegations regarding his symptoms.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND** entering an order **AFFIRMING** the final decision of the Commissioner, **DENYING** Roger's Motion for Summary Judgment (Dkt. 14), and **DISMISSING** this case from the court's docket.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Roger is not disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

**CLAIM HISTORY**

Roger filed for DIB on April 23, 2015, claiming his disability began on September 15, 2014, due to anxiety, high blood pressure, difficulty sleeping, rapid heartbeat, exhaustion, emotional stress, difficulty eating, coping problems, and shortness of breath. R. 190. Roger remained insured through September 30, 2016; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 187, 388; 42 U.S.C.

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

§§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency

denied Roger's applications at the initial and reconsideration levels of review. R. 68–79, 81–91.

The Commissioner held a hearing and then entered a decision on December 11, 2017 denying

Roger's request for disability benefits. R. 32. Roger appealed the ALJ's decision, and the

Appeals Council denied his request for review on November 15, 2018. R. 1–6. By Order dated

March 10, 2020, the Court vacated the Commissioner's decision on December 11, 2017 (R. 18–

32) and remanded the case for further administrative proceedings and to issue a new decision.

R. 461–62, 478. Specifically, Roger's claim was remanded because the ALJ failed to properly

evaluate Roger's mental RFC and failed to properly account for his moderate limitation in

adapting or managing himself. R. 463, 470–73. On remand, ALJ Thomas Erwin convened a

hearing on December 16, 2020, where Roger was represented by counsel, and vocational expert

Sheri Pruitt testified by telephone. R. 404–29. On January 6, 2021, the ALJ entered his decision

considering Roger's claim under the familiar five-step process[4] and again denying his claim for

benefits. R. 386–98.

The ALJ found that Roger was insured at the time of the alleged disability onset and that

he did not engage in substantial gainful activity during the period from his alleged onset date of

September 15, 2014, through his date last insured on September 20, 2016. R. 388. The ALJ

found that Roger suffered from the severe mental impairments of anxiety and depression. R. 389.

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence,
whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the
requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform
other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520);
Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant
disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of
proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the
Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work
experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C.
§ 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 389–91. The ALJ found that regarding his mental impairments, Roger had moderate limitations in interacting with others and concentrating, persisting or maintaining pace, and mild limitations in understanding, remembering or applying information, and adapting or managing oneself. R. 390.

The ALJ concluded that through the date last insured, Roger retained the RFC to perform a full range of work at all exertion levels, except he cannot be around unprotected heights; is limited to instructions and tasks that can be learned in 30 days or less; can deal with no more than occasional changes in the work setting; and can have no more than occasional interaction with the public, coworkers, and supervisors. R. 391. The ALJ determined that Roger cannot perform his past relevant work as a tractor truck driver and security guard, but he could perform jobs that exist in significant numbers in the national economy, such as a laundry worker, hand packager, and factory helper. R. 397–98. Thus, the ALJ determined that Roger was not disabled, making the ALJ's decision the Commissioner's final decision. R. 398.

## ANALYSIS

Roger alleges that the ALJ failed to properly (1) assess his mental impairments and (2) assess his subjective allegations regarding his symptoms.

### A.  Medical History Overview

1.  Medical Treatment

Roger has suffered from anxiety disorder since at least 2007. R. 254. On October 18, 2011 Roger complained to Jitendra Desai, M.D. of anxiety, depression, sleep disturbance, chest tightness, fearfulness, frequent panic attacks, and panicky feelings. R. 246–47. Dr. Desai continued Roger's Prozac and Trazodone mediations. R. 246.

4

On April 17, 2012, Roger reported to Dr. Desai that he was doing well overall including no psychotic symptoms, sleeping well, and a good appetite. R. 245. Roger further reported that he "enjoys work" and was "not thinking about retiring anytime soon." Id. At his April 9, 2013 visit with Dr. Desai, Roger reported that his panic attacks were less frequent and less severe; he had no sleep or appetite disturbance, no fatigue, depression, anxiety, poor concentration, diminished energy, poor motivation, irritability, impulsivity, or mood swings. R. 243–44. Roger told Dr. Desai at that time that he was contemplating semi-retirement. R. 243.  On December 18, 2013, Roger had a hypertension follow-up visit with Sarat Burri, M.D., and denied chest pain, shortness of breath, and dizziness. Roger reported that his blood pressure readings had been better since his last visit. R. 260–61. Dr. Burri noted that Roger's mood and affect were normal and that he had appropriate interactions. R. 261.

From 2014 to 2016, Roger's treatment for his anxiety and depression was minimal and consisted of medication and occasional counseling. At his April 2014 visit, Dr. Desai described Roger's speech as fluent and coherent, his mood and affect were appropriate, his attention and concentration were within normal limits, and his memory, insight, and judgment were intact. R. 241–42. While Roger reported an anxiety attack, he denied any change in memory, depression, concentration, poor motivation, decreased functioning, paranoia, psychosis, poor energy, mania, mood swings, irritability, or impulsivity. R. 241. Roger also interacted appropriately with normal mood and affect at his May 2014 visit with Dr. Burri. R. 258.

On September 23, 2014, Roger reported to Dr. Desai that he was handling his job termination "well," denied any side effects from his medications, and Dr. Desai noted that his mental health symptoms were "moderate" despite situational stressors. R. 238. Dr. Desai noted that Roger had impaired attention and concentration, but that the rest of his mental examination

was normal such that Roger was fully oriented with normal speech and a logical thought process that was tangential at times, that he had intact associations, unremarkable thought content, fair insight and judgment and a full-range affect. The ALJ also found that Roger had a euthymic mood, intact memory, and good fund of knowledge. Id.

Roger's mental health follow-up visits from March 2015 to January 2017 reflected that his mental impairments were stable, with impaired attention and concentration and increased stress, but otherwise unremarkable findings. R. 238, 239, 305–07. Roger also consistently denied experiencing side effects from his medication and had "moderate" mental health symptoms at every appointment. Id. In March 2015, Roger stated he was keeping busy with "working out and looking for a job." R. 239. In June 2016, Roger reported "same old, no change." R. 306. From 2015 to 2019, Roger reported to Dr. Desai that he was working out regularly and active in church. R. 305, 306, 307, 611, 616, 609.

During medical visits from March 2015 to April 2016 addressing issues unrelated to his mental impairments, Roger presented with a normal mood and affect, appeared well, interacted appropriately, and had a generally normal mental status. See R. 255, 297, 319, 324. On April 4, 2016, Dr. Burri noted that Roger's anxiety, depression and insomnia were stable with his medication. R. 330.

At his January 4, 2017 visit, Roger reported to Dr. Desai that he was taking his prescribed medications and denied side effects, but that he continued to have anxiety attacks. R. 307. On July 5, 2017, Roger reported anxiety attacks off and on after he lost his brother to a heart attack several months earlier. R. 616. Dr. Desai noted that while Roger had a sad affect, he had the same mental status examination findings as before, with a logical thought process that was tangential at times. Roger also had impaired attention/concentration, but an intact memory. Id.

6

On October 29, 2018, Roger reported to Dr. Desai that he had been having more anxiety attacks, and had anticipatory anxiety about random panic attacks. He also reported that would get easily overwhelmed with day-to-day events. R. 611–12. On December 4, 2019, Roger reported to Dr. Desai that his anxiety attacks were more frequent and lasted longer, and left him emotionally and physically drained for a couple of days. R. 609. Dr. Desai noted that despite his stress, anxiety attacks, and impaired attention/concentration, Roger had normal mental findings. Id.

During a June 3, 2020 telephonic visit with Dr. Desai, Roger reported no side effects from his medication, that he was sleeping well, had a good appetite, missed going to the gym, and kept himself busy. R. 602. Dr. Desai noted that Roger was "calm, not depressed" and that his anxiety attacks have diminished. Id.

2.   Medical Opinion Evidence

On July 16, 2015, state agency medical consultant Joseph Leizer, Ph.D., found that Roger's mental impairments caused moderate limitations in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, and work in coordination with or in proximity to others without being distracted by them. R. 76–77. Dr. Leizer determined that Roger is moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically–based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 76. Dr. Leizer also found that Roger has a moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Id. Dr. Leizer further found that these mental limitations do not preclude Roger from performing the basic mental demands of competitive work on a sustained basis. R. 77. The ALJ gave Dr. Leizer's medical opinion significant weight. R. 395.

7

On reconsideration on November 13, 2015, Alan D. Entin, Ph.D., identified Roger's anxiety disorders and affective disorders as severe impairments. R. 81–92. Dr. Entin found that Roger never had an extended episode of decompensation, had only mild restrictions of activities of daily living and in maintaining social functioning, but moderate limitations in maintaining concentration, persistence or pace. Id. Dr. Entin also found that Roger had moderate limitations in his ability to understand, remember, and carry out detailed instructions, and to work in coordination with or in proximity to others without being distracted. These moderate limitations also affected Roger's ability to interact appropriately with the general public, to accept instructions, and to respond appropriately to criticism from supervisors, get along with co–workers or peers without distracting them or exhibiting behavioral extremes. Dr. Entin also concluded that Roger had moderate limitations responding appropriately to changes in the work setting, traveling in unfamiliar places or using public transportation. Finally, Dr. Entin found that Roger had moderate limitations in his ability to perform at a consistent pace without an unreasonable number and length of rest periods and to complete a normal workday and workweek without interruptions from psychologically–based symptoms. Id. The ALJ gave Dr. Entin's medical opinion significant weight. R. 395.

On December 16, 2020, Dr. Desai provided a checklist form finding that Roger has suffered from agoraphobia and panic attacks since his onset date which cause moderate limitations in his ability to maintain regular attendance and be punctual within customary tolerances and to complete a normal workday and workweek without interruptions from psychologically based symptoms. Dr. Desai also concluded that Roger had moderate limitations in his ability to get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes and that these limitations affected his ability to deal with workplace stress,

8

to interact appropriately with the general public, and to use public transportation. R. 618–19. Dr.

Desai also found that Roger had marked limitations in his ability to work in coordination with or

proximity to others without being unduly distracted, to perform at a consistent pace without an

unreasonable number and length of rest periods, and to accept instructions and to respond

appropriately to criticism from supervisors. Roger also had marked limitations in his ability to

respond appropriately to changes in a routine work setting, to understand, to remember, and to

carry out detailed instructions. These marked limitations also affected Roger's ability to deal

with the stress of semiskilled and skilled work, and to travel in an unfamiliar place. Id. Further,

Dr. Desai found that Roger had a marked loss of ability to concentrate and that he would miss

work about three times a month due to his impairments. R. 618–20. The ALJ gave Dr. Desai's

opinion some weight. R. 395.

### B. Mental Impairments 96-8p

Roger argues that the ALJ failed to properly assess his mental impairments as required by

SSR 96-8P. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR

96-8P (S.S.A. July 2, 1996). Specifically, Roger asserts that the ALJ failed to explain the RFC

findings address or accommodate Roger's moderate limitations in concentration, persistence, or

pace, or in interacting with others. Pl.'s Br. at 14, Dkt. 15. Roger also claims that the ALJ failed

to explain how he arrived at his conclusion that Roger is limited to instructions and tasks that can

be learned in 30 days or less. Id.[5]

---

[5] Roger's argument that the ALJ erred by not adopting or discussing the mental limitations from the
previous ALJ's vacated decision on December 11, 2017 is meritless. Pl.'s Br. at 13, Dkt. 15; R. 433, 478. The ALJ
presiding over the subsequent hearing was not bound by the previously vacated decision and was free to find that
Roger had a mild limitation in adapting or managing oneself if substantial evidence from the record supports such a
finding. See Large v. Barnhart, No. 2-cv-00100, 2006 WL 36751, at *6 (W.D. Va. Jan. 6, 2006) (noting that a
vacated decision is not the Commissioner's final decision and has no res judicata effect).

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarified that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). The decision in Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v.

Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that

Mascio does not broadly dictate that a claimant's moderate impairment in concentration,

persistence, or pace always translates into a limitation in the RFC, but instead underscores the

ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826

F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including

discussing what evidence he found credible and specifically applying the law to the record).

     This is not a situation like Mascio, where the ALJ summarily concluded that a limitation

to simple, unskilled work accounts for the claimant's moderate impairment in concentration,

persistence, and pace without further analysis. Unlike the claimant in Mascio, the medical

evidence here supports the ALJ's conclusion that, despite his moderate limitations in

concentration, persistence, or pace and interacting with others, Roger is capable of performing

the basic mental demands of simple work with the specified accommodations. Further, here, the

ALJ explained why Roger's moderate limitations in concentration, persistence, or pace and

interacting with others, did not translate into a limitation in the RFC beyond work limited to

instructions and tasks that can be learned in 30 days or less, occasional changes in the work

setting, and no more than occasional interaction with the public, co-workers, and supervisors.

R. 391.

     Roger asserts that the ALJ failed to address his ability to sustain work over an eight-hour

workday, and that the RFC addresses only skill level and not an ability to stay on task. The ALJ

explained that despite Roger's moderate impairment with concentration, persistence or pace, his

records reflected that he can maintain focus. R. 395. The ALJ gave weight to the state agency

consultants' findings that Roger could perform sustained work activities. R. 77, 89, 395.

Specifically, the ALJ gave significant weight to Dr. Leizer's opinion that "the limitations

resulting from the impairments do not preclude [Roger] from performing the basic mental demands of competitive work on a sustained basis." R. 77. The ALJ further gave significant weight to Dr. Entin's opinion that Roger "would be capable of carrying out simple, 1-3 step instructions, performing activities within a schedule, sustaining an ordinary routine without supervision… [Roger] can adequately maintain attention and concentration for 2 hour periods with normal breaks throughout the day." R. 89. Thus, the ALJ considered and explained his conclusion that Roger could sustain work for an eight-hour day.

As a preliminary matter, the ALJ adequately supported his finding that Roger could sustain work activity over the course of an eight-hour workday and accounted for Roger's moderate impairments in his hypothetical questions to the vocational expert ("VE") and in the RFC. The ALJ asked the VE to consider an individual of Roger's age, education, and work history who is able to perform work at all exertion levels except unable to be around unprotected heights, is limited to instructions and tasks that can be learned in 30 days or less, can deal with no more than occasional changes in the work setting, and can have no more than occasional interaction with the public, coworkers, and supervisors. R. 426. The ALJ further directed the VE to consider stress limitations on work and asked, "if an individual is unable to really tolerate work stresses and … I'll translate that into if on average about once a week, even not going to show up for work or going to leave unexpectedly…due to being unable manage competitive employment." R. 427. The ALJ is not required to pose hypothetical questions to the VE relating to impairments not supported by the record. See Fisher v. Barnhart, 181 Fed. App'x 359, 364 (4th Cir. 2006) (citing Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005)) ("[A] hypothetical question is unimpeachable if it 'adequately reflect[s]' a residual functional capacity for which the ALJ had sufficient evidence."); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)

(stating vocational expert's opinion must be in response to hypothetical questions that "fairly set out all of claimant's impairments").

The ALJ properly explained how the RFC accommodates Roger's moderate impairments in concentration, persistence, or pace. For his moderate limitation in concentration, the ALJ explained that "he would be able to focus on such simple work, which would not require significant focus effort." R. 390. In terms of persistence and pace, the ALJ stated "work that can be learned in 30 days or less would not require much effort, and this accommodates persistence issues he would have from depression." Id. The ALJ acknowledged Roger's testimony regarding his impaired concentration, anxiety, panic attacks and the side effects of his medications that result in fatigue and cause Roger to take naps throughout the day. R. 392. However, the ALJ also noted that Roger testified to losing his job after a motor vehicle accident and claimed to be unable to attain other work due to his age, medication, and driving record. R. 391–92, 414. The ALJ noted that Roger applied to multiple jobs during the relevant period and filed a complaint with the EEOC, "indicating he felt he was capable of working." R. 394.

Further, the ALJ considered Roger's medical history, including treatment notes that reflected mostly normal mental status findings and activities of daily living such as household tasks and shopping. R. 390, 392–94. The ALJ also noted that Dr. Desai's finding of some tangential thinking and impaired concentration indicate that Roger would have difficulty with skilled and semi-skilled work, but do not indicate Roger is unable to concentrate on simple work. R. 239, 305, 306, 307, 390, 395. The ALJ concluded that Dr. Desai's findings do not indicate an inability to perform work that can be learned in 30 days, as such work would require little focus effort. R. 395. The ALJ further explained that the additional limitation of occasional workplace changes combined with the limitation to work that can be learned in 30 days accommodated

Roger's mental impairments and symptoms by "prevent[ing] him from being overwhelmed."
R. 395. Finally, the ALJ relied on the opinions of the state agency consultants who both found
Roger had moderate impairments in concentration, persistence, or pace and could carry out
simple, one to three step instructions and perform routine tasks. R. 76–77, 88–89, 395. Dr. Leizer
noted that Roger's mental limitations "do not preclude him from performing the basis mental
demands of competitive work on a sustained basis." R. 77. The ALJ gave the state agency
medical consultants' opinions significant weight. R. 395.

Regarding his moderate limitation in interacting with others, the ALJ noted that while
Roger reported irritability and frustration at his medical visits there is no evidence of
belligerence.[6] R. 239, 305–07, 395. The ALJ also noted Roger's hearing testimony that his lack
of socialization was due to financial issues, not social anxiety. R. 390. The ALJ relied on medical
records indicating Roger was pleasant and cooperative and noted that nothing in the record
indicates that he would have difficulty accepting criticism. See, e.g., 239, 255, 296–98, 305–07,
319, 323–24, 330, 396. The ALJ also noted that Roger enjoyed going out to high school football
games, being active in church, and shopping. R. 390. Accordingly, the ALJ found that "[t]he
evidence does not indicate why [Roger] would be so distracted from working around others," as
there was no indication of social anxiety in either the records or his testimony. R. 396. Thus, the
ALJ concluded that Roger was limited to only occasional interaction with the public,
supervisors, and coworkers. R. 391.

---

[6] Roger argues that "the ALJ appears to indicate that a lack of belligerence is now the new standard for
acceptable behavior in the workplace, which is in error." Pl.'s Br. 20, Dkt. 15. However, the ALJ did not indicate
that there is a belligerence standard, but explained how Roger's behavior was one aspect factored into assessing his
alleged symptoms to determine his mental RFC. R. 395–96; See 20 C.F.R. § 404.1529(b)(3)(vii).

The ALJ adequately reviewed Roger's mental impairments and properly explained how he accommodated Roger's moderate limitations in concentration, persistence, or pace and interacting with others.[7] See Richardson v. Berryhill, No. 5:15-CV-173-RJC-DSC, 2019 WL 1354042, at *3 (W.D.N.C. March 26, 2019) (because ALJ "provided ample discussion of how [a plaintiff's] mental impairments impact[ed] her ability to perform work-related tasks," an RFC that limited a plaintiff to a nonproduction pace passed muster "because the ALJ contextualized and explained how he reached his conclusion[.]").

Roger also argues that the ALJ's assessment of Dr. Desai's opinion was not supported by substantial evidence. Pl.'s Br. at 19–20, Dkt. 15. The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."[8] 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"). Thus, "[b]y negative implication, if a physician's opinion is

---

[7] Roger argues that ALJ's misstatement that Roger experienced impaired attention and concentration issues in April 2014 when he was able to perform his semi-skilled trucking job harms the ALJ's assessment of Dr. Desai's opinion. R. 396; Pl.'s Br. at 20, Dkt. 15. While it is correct that Dr. Desai's April 2014 treatment notes indicate that Roger's attention and concentration were within normal limits (R. 241), I find that the ALJ's misstatement is a harmless error. Here, the ALJ found that Roger was unable to perform skilled or semi-skilled work, and thus was unable to return to his prior trucking job. R. 397. Therefore, the ALJ's harmless error would not have changed the findings of non-disability nor his RFC determination, which limited Roger to simple work that can be learned in 30 days. See Mickels v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (noting that remand is not proper where the ALJ "would have reached the same result notwithstanding his initial error").

[8] The social security regulations regarding the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c (setting out rules for claims filed on or after March 27, 2017, including that no specific evidentiary weight, including controlling weight will be given to any medical opinions). However, as this claim was filed on April 23, 2015, prior to the effective date of the amended rule, I will apply the rules in 20 C.F.R. §§ 404.1527(c), 416.927.

not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W. Va. Mar. 28, 2011).

Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

The Fourth Circuit recently clarified the level of explanation required by the ALJ to sufficiently support the weight given to a medical opinion. Arakas v. Comm'r, 983 F.3d 83, 107 (4th Cir. 2020). The ALJ must provide a narrative discussion describing how the evidence in the record supports each of his conclusions, citing specific medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe, 826 F.3d at 189. The failure of an ALJ to specifically state what treatment history or evidence contradicts a particular medical opinion means "the analysis is incomplete and precludes meaningful review." Id. at 190. "Where a lack of specificity and analysis prohibits the district court from gleaning the evidence relied upon or the reasoning for weight afforded contradictory opinions, the district court cannot merely look to the record or conclusory statements within the

opinion, but must remand the case so that the ALJ can adequately explain if and how the

evidence supports his RFC determination." Rucker v. Colvin, No. 715cv148, 2016 WL 5231824,

at *4 (W.D. Va. Sept. 20, 2016) (citing Mascio, 780 F.3d at 637).

Here, the ALJ properly assessed Dr. Desai's opinion in formulating his RFC assessment

and explained his conclusion that Dr. Desai's opinion was not fully consistent with the evidence

in the record. R. 395. The ALJ noted that Dr. Desai's marked social interaction limitations were

inconsistent with Roger's lack of complaints regarding social anxiety at his mental health visits.

R. 396. The ALJ also noted that Dr. Desai's marked social limitations were inconsistent with

Roger's reported frustration after losing his EEOC suit, and the ALJ noted that nothing in the

record indicated that Roger had difficulty accepting criticism. Id. The ALJ also found Dr.

Desai's opinion that Roger would miss more than two days per month due to his mental

impairments unsupported, because there was no evidence that Roger's panic attacks either before

or after the period at issue caused such absenteeism. Id. Specifically, the ALJ noted that Roger's

complaint about panic attacks leaving him "drained" was not until December 2019, which was

three years after his date last insured. R. 396, 602. Further, the ALJ noted that Dr. Desai's

limitations were not consistent with Roger's primary care records reflecting that Roger

consistently reported that he had no side effects from this medications, had appropriate

interactions, normal mood and affect, and his anxiety and depression were stable. R. 255, 296,

297, 298, 319, 323, 324, 330, 395.

The ALJ's reasoning is supported by the opinions of the state agency consultants and the

ALJ's consideration of the record and Roger's testimony. This court is not "left to guess about

how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637. As such, I conclude that

substantial evidence supports the ALJ's conclusions regarding Roger's RFC finding.

### C.  Subjective Allegations

Roger asserts that the ALJ failed to explain his conclusion that Roger's allegations are not fully supported by the record. Pl.'s Br. at 21–25, Dkt. 15. Specifically, Roger argues that the ALJ did not acknowledge the extent to which Roger performed his daily activities and provided no explanation as to how those activities showed he could persist through an eight-hour workday. Id. at 22. Roger also argues that the ALJ failed to explain how his attendance at church and exercise routine undermine his allegations of having difficulty interacting with others, poor stress tolerance, difficulty concentrating, and panic attacks twice per month that leave him drained for two to three days after the attack. Pl.'s Br. at 15, Dkt. 15. Roger does not identify specific instances in this case where the ALJ improperly applied the legal standards. Rather, Roger asks this court to re-evaluate his subjective allegations and come to a different conclusion from that of the ALJ. That is not the standard of a social security appeal.

When evaluating a claimant's symptoms, an ALJ must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3. Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. "At this step, objective evidence is *not* required to find the claimant disabled." Arakas, 983 F.3d 83 (4th Cir. 2020) (citing SSR 16-3p, 2016 WL 1119029, at *4–5). SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id.

at *4. Thus, the ALJ must consider the entire record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

Unlike the ALJ in Brown, 873 F.3d 251, 271, the ALJ did not rely on minimal daily activities for the finding of non-disability, but used Roger's daily activities as a factor in his assessment of Roger's subjective allegations. R. 391–96. See Ladda v. Berryhill, 749 F. App'x 166, 173 n.4 (4th Cir. 2018). The ALJ properly reviewed Roger's medical history and his subjective allegations and found that Roger's statements regarding the intensity, persistence, and limiting effects of his alleged symptoms were not entirely consistent with the medical and other evidence in the record. R. 391. The ALJ outlined Roger's testimony of side effects from his medication, limited social activities due to lack of income, and daily activities of shopping and attending high school football games. R. 391–92, 423–25, 498. Roger reported in March 2016 that he was able to live alone with no significant issues in caring for himself or handling his personal needs. R. 323. At medical visits with Dr. Desai, Roger consistently reported that he kept busy with activities such as "working out" and "being active in his church." R. 239, 305, 306, 611, 616, 609. The ALJ noted Roger's allegations regarding panic attacks that occurred a few times monthly and took days to recover. R. 392, 418–20. The ALJ also considered Roger's filing of an EEOC claim reported that he felt capable of working, that he suffered from anxiety and depression prior to the alleged onset date which did not lead to his job loss, and his reference to thirty-five submitted job applications during the relevant period to evaluate the credibility of Roger's subjective allegations. R. 394. The ALJ concluded that Roger could perform work, and stated that "these activities do not indicate he was suffering much anxiety, but rather than he was seeking to occupy himself." Id. Thus, the ALJ cited Roger's daily activities as part of the logical

bridge to his conclusion that Roger's subjective complaints were not entirely consistent with the evidence of record.

The ALJ was entitled to find that the objective medical evidence outweighed Roger's subjective statements, and he provided a sufficient rationale for doing so. A reviewing court gives great weight to the ALJ's assessment of a claimant's subjective allegations and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that substantial evidence supports the ALJ's analysis of Roger's subjective complaints with substantial evidence and that Roger can perform work with limitations stated in the ALJ's opinion.

## CONCLUSION

I **RECOMMEND** entering an order **AFFIRMING** the final decision of the Commissioner, **DENYING** Roger's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record.  Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court

as a waiver of such objection, including the waiver of the right to appeal.

Entered:  August 4, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge